SOPHRONIA E. STONE, now OSTRANGER, and husband, Respondents, v. J. W. PENNOCK, Executor of SAMUEL M. BOWMAN, Deceased, Appellant.

### Kansas City Court of Appeals, July 2, 1888.

1. PRACTICE—TRIAL BY COURT—INSTRUCTIONS, HOW CONSIDERED IN THIS COURT—CASE ADJUDGED.—Where a case is tried by the court without the intervention of a jury (as in this case), this court will consider the declarations of law given and refused only for the purpose of determining the theory on which the court tried the case. And every presumption must be made by this court in favor of the action of the trial court.

2. CONTRACT—SIGNING BY ONE PARTY—EFFECT OF ACCEPTANCE, ETC.— CASE ADJUDGED.—Although one of the parties to a contract does not sign it,—but only the party of the other part,—still if the party not signing accepted the contract and performed the services therein called for (as in this case) there is no merit in the objection that it was not signed by her.

3. ——— TERMS OF AS TO WHEN COMPENSATION WAS TO BECOME PAY- ABLE.—The fact, in this case, that the entire compensation fixed by the contract was to become due and payable on the death of the deceased, does not render the contract void as being against public policy.

4. ——— LEGACY—RULE CONCERNING AS TO SATISFACTION OF DEBT. In the case of a legacy to a creditor, the rule is that when the legacy is the same in amount as the debt, still the legacy shall not (in the absence of proof that the intention of the testator was that it should) be deemed satisfaction of the debt; if the legacy is to be paid on terms less advantageous to the creditor than the terms on which the debt is payable.

APPEAL from Jackson Circuit Court, HON. JAMES H. SLOVER, Judge.

*Affirmed.*

The case is stated in the opinion.

C. O. TICHENOR, for the appellant.

I.   The evidence shows that the purpose of the agreement was to give plaintiff two thousand dollars.   There was no consideration for it.   It had no effect on the conduct of the parties.   Plaintiff did not sign it.

II.   When the agreement was made deceased had not made his will.   The agreement is testamentary in its character and designed as such.   It was to put the transaction, as one witness says, "above the law."   It is void for this reason.   *Haydock v. Haydock*, 34 N. J. Eq. 575.

III.   By his will, Bowman, among other things, left her two thousand dollars.   The legacy of an equal amount may be a satisfaction of a debt.   *Crouch v. Davis*, 23 Gratt. (Va.) 92 ; *Strong v. Williams*, 12 Mass. 395 ; *Pollock v. Wornall*, 28 Ch. Dis. 552.

IV.   A confidential relation existed at the time this contract was signed.   " It is settled by an overwhelming weight of authority, that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other.   The relation in it need not be legal ; it may be moral, social, domestic, or merely personal."   2 Pom. Eq., sec. 956, p. 480.   Of course, a nurse comes within the rule.   *Bayliss v. Williams*, 6 Coldw. 442, and cases cited.   There never was a case where a patient was subject to the influence and control of a physician, as the deceased was subject to that of plaintiff.

V.   " Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction

could not have been impeached, if no such confidential relation had existed." 2 Pom. Eq., sec. 956, p. 479. The language of the Supreme Court of the United States, is as follows: "But they do sit to enforce what has not inaptly been called a technical morality. If confidence is reposed, it must be faithfully acted upon and preserved from any intermixture of imposition. If influence is acquired, it must be kept free from taint of selfish interests, and cunning and over-reaching bargains. If means of personal control are given, they must be always restrained to purpos es of good faith and personal good." *Taylor v. Taylor*, 8 How, 200; *Ford v. Hennessey*, 70 Mo. 591; *Bradshaw v. Yates*, 67 Mo. 228; *Garvin v. Williams*, 44 Mo. 478; *Cadwallader v. West*, 48 Mo. 496; *McLure v. Lewis*, 72 Mo. 314.

VI. Going on the theory that the agreement was not one for a gift, even then we find that she gets fifty-nine hundred dollars for three months' services, which she had all along agreed were worth only twenty-six dollars per month and board of child. In *Kelly v. Caplice*, 23 Kas. 477, the court says: "She thought herself in a condition to exact an unconscionable bargain and for services worth only a few cents, she demanded and received a written promise for the payment of nearly five hundred dollars. The mind revolts from the enforcement of such a promise, and the courts as a rule, under such circumstances, seize upon the slightest act of oppression or advantage to set at naught a promise thus obtained."

VII. It was to the interest of the deceased to be well cared for, so that his health might be restored. That was the reason why plaintiff was serving him. So soon as the agreement was signed their interests conflicted. The sooner he died, the sooner she would get the two thousand dollars. Not only this, but she would be relieved from much care and trouble, and would have the unexpired term, in which to do other work. Such a contract is against public policy. Wald's Pollock on Contracts, 568.

WASH ADAMS and R. H. FIELD, for the respondent.

I. That the contract sued on was executed and delivered ( or its delivery authorized ) by S. M. Bowman, appellant's testator, and that Mrs. Stone faithfully performed the services therein called for, stand conceded, hence there is nothing in the objection that Mrs. Stone's name was not signed to this contract. *Hutchison v. Railroad*, 37 Wis. 600, 601; *Railroad v. Derkes*, 103 Ind. 520; *Lewis v. Ins. Co.*, 61 Mo. 534; *Lindell v. Rokes*, 60 Mo. 249; *Mastin v. Grimes*, 88 Mo. 478.

II. The inconsistencies of the positions taken by the learned counsel for the appellant in his brief, as deductions from the facts of this case, are marked. ( 1 ) The claim is that the contract sued on was a simple gift from General Bowman. ( 2 ) That it was a cruel and oppressive obligation extorted by Mrs. Stone from him. As to the first the court gave an instruction for defendant, that if it was a gift plaintiff could not recover. As to the other position no instruction, embodying this theory, was asked or refused by the trial court, and the evidence shows that no undue influence was exercised or attempted. Is this court going to say that his executor shall not discharge out of this large estate the pitiful sum sued for by this lady and agreed to by General Bowman for the humiliating and faithful service conceded to have been rendered him simply because it may be true that he might have retained her for a less sum—or will it allow and enforce the contract so solemnly executed, and so carefully designed to be carried out by him? Said the Supreme Court of this state in *Lindell v. Rokes*, 60 Mo. 252, reiterating with approval a statement made in an early case in this state: " This court is not aware of any law releasing men from their lawful contracts, unless in cases of fraud, imposition, accident, or mistake in their creation, and neither of which appear or can be shown in this case to defeat the contract sued on. The presumption is in favor of the validity of this contract." *Priest v. Way*, 87 Mo.

16. The appellant has just as much right to contest the amount provided (in the third clause of the will) for interring and erecting a monument over General Bowman and his wife, as he has to contest the adequacy or inadequacy of the sum sued for, for the services rendered.

III. Mrs. Stone testified that the contract sued on was never substituted by any other arrangement, and that she performed the services therein called for, relying upon its validity. The trial court believed her, and this court will defer to its judgment as to her credibility. *Russell v. Adkins*, 24 Mo. App. 605. Besides, the execution of the written contract sued upon was *per se*, a supersedure of all anterior contracts. *Hagar v. Hagar*, 71 Mo. 610 ; *Chrisman v. Hodges*, 75 Mo. 413. There is no evidence of any arrangement subsequent to the execution of the contract sued on. The simple payment and receipt of twenty-six dollars per month after that, as before, for possible exigencies of Mrs. Stone, did not, *per se*, substitute the contract sued on. It was certainly never designed by either of the parties that it should have that effect. The court below deducted these payments as credits on the amount sued upon. This was as much as appellant was entitled to have therefrom. And were the specific evidence lacking as to the character and value of the services of this plaintiff, the fact that the contract is in writing would alone negative the assertions of the learned counsel (unsupported by any evidence as they are) of no or an inadequate consideration. *Lindell v. Rokes*, 60 Mo. 249 ; *Williams v. Jenson*, 75 Mo. 685. But the record teems with testimony showing the onerous and precarious character of the services, and of her uniform fidelity in their discharge.

IV. There was no intention to adeem this debt by legacies. 2 Redfield on Wills [3 Ed.] 190. Both the will and codicil show that the amounts therein were added, and were not intended to be in payment of the debt sued upon. 2 Williams on Ex'rs [last Ed.] 1406 ;

2 Roper on Legacies, 53. The rule is that there is no warrant for the inference, that the one is intended to be a substitute for the other unless the legacy be payable at the same time and place and as advantageous to the creditor as his debt. 2 Roper on Legacies, 38.

V. But had Bowman intended the legacies to be in ademption, that would constitute no defence to this suit, when it is not pretended that Mrs. Stone has ever received one cent of either of such bequests. It would certainly be with the plaintiff to elect between them. Adams' Equity, marg. p. 105.

VI. Nor is the contract sued upon void for the reasons set forth in the last point of counsel for appellant. Contracts for a bequest or devise, or for a .stipulated sum for services during the life of the employer ( and in these instances for large rewards ) have frequently been before the courts, and were repeatedly affirmed. One of the cases cited by the learned counsel for appellant was such a contract, and it was enforced. We refer now to the case of *Strong v. Williams*, 12 Mass. 395. See, also, same by our own Supreme Court. *Gupton v. Gupton*, 47 Mo. 37 ; *Sutton v. Hayden*, 62 Mo. 101 ; *Hiatt v. Williams*, 72 Mo. 214.

HALL, J.—The plaintiff Sophronia E. Stone, now Ostranger by marriage, presented her claim to the probate court for allowance. The claim was based on the following agreement executed by the defendant's testator : " Memorandum of agreement made this third day of March, 1885, between Sophronia E. Stone of the first part, and Samuel M. Bowman of the other part, all of Kansas City, Missouri, witnesseth, that the said Sophronia E. Stone hereby agrees for and in consideration of the sum hereinafter mentioned to serve the said S. M. Bowman, in capacity she now occupies as nurse for himself and to superintend his household affairs and to attend to all other matters that require her attention, for the term of three years from the twenty-third day of October, 1884. For the faithful performance of these duties,

on the part of the party of the first part, S. M. Bowman agrees to pay her the sum of two thousand dollars. It is faithfully agreed to by the parties hereto that in event of the death of the said S. M. Bowman before the expiration of the three years above stated, the further services on the part of the said Sophronia E. Stone shall cease and the two thousand dollars shall be due and payable in full. In testimony of the foregoing the parties hereby bind themselves, their heirs, executors, administrators and assigns, and have hereunto affixed their hands and seals the date above written.

[Seal]                         "S. M. Bowman.

" Witness present :

"D. Estaing Dickerson."

The agreement was acknowledged before the defendant Pennock, as a notary public.

The deceased, a man of prominence and of considerable wealth, in amount about one hundred and fifty thousand dollars, the evidence showed was, in September, 1884, stricken with paralysis.

He was a married man, but without children, and his wife was hopelessly insane. He was thus in need of that care and attention, which only a devoted wife ordinarily can give to a man, and he was without a wife able to give them. Under such circumstances he advertised for a housekeeper, and the plaintiff, a widow at that time with one child, a daughter named Daisy Stone, answered the advertisement, and was employed to take care of him. Her wages were at first fixed at eighteen dollars per month. In about six weeks they were raised to twenty-six dollars per month and the board of her child.

The evidence showed that the plaintiff made a most faithful housekeeper and nurse for the deceased, giving to him the care and attention that no wife could have exceeded, and that mere money cannot fully compensate. The deceased fully appreciated the services thus rendered and in various ways exhibited a generous disposition to compensate the plaintiff for them as fully as

it lay in his power to do so. The evidence all showed, however, that in no wise did the plaintiff do anything to induce the deceased to exercise such generosity except by the faithful and devoted treatment and care towards him as his nurse and servant, and that all the deceased did for the plaintiff or proposed to do for her, he did out of a generous impulse naturally and spontaneously arising from her devoted care.

On the third day of March, 1885, the deceased voluntarily entered into the agreement in controversy. Although not asking for the agreement, and in no manner inducing it, the plaintiff accepted it, and continued to discharge her duties as housekeeper and nurse until the death of the deceased in June, 1885. After the execution of the agreement, the plaintiff received from the deceased the sum of fifty-two dollars, wages for two months' services. The deceased conveyed to plaintiff a lot in Kansas City, which she afterwards sold for twenty-nine hundred dollars. All the evidence showed that the conveyance of the lot was not made in satisfaction of the agreement in suit. Before making the agreement in suit, the deceased executed an agreement by which he contracted to give the plaintiff certain personal property. The will referred to this agreement, and, under the provisions of the will, the defendant executor delivered the property to the plaintiff. The property was of the value of five hundred dollars. The will of the deceased gave a legacy of five hundred dollars to the plaintiff's child, Daisy Stone ; and it also gave to the plaintiff the sum of one thousand dollars, and the codicil added to this bequest the sum of one thousand dollars. But, by the provisions of the will, all the legacies were to be paid after the death of the wife of the deceased. The will was dated March 17, 1885 ; the codicil, May 16, 1885. There was no evidence that the legacies given by the will were intended to satisfy the obligation imposed on the deceased by the agreement in suit, but, on the contrary, all the evidence tended to show the contrary.

The court sitting as a jury gave the following declaration of law for the plaintiff :

" If the court, sitting as a jury, believes, from the evidence, that the testator, S. M. Bowman, executed the contract sued on and read in evidence, and delivered the same, or authorized the delivery of the same, to plaintiff, then Mrs. Sophronia E. Stone ; that she accepted the same and performed the services therein called for under the said contract up to the time of the testator's death, then she should recover herein the sum of two thousand dollars, less any sum of money, if any, that may have been paid her by him on account of said contract before his death, after the execution and delivery thereof."

The court gave for defendant the following declaration of law :

" 6.   That if the sum of two thousand dollars mentioned in said agreement of March 3, 1885, was intended by the parties thereto as a gift, plaintiff cannot recover."

And refused to give the following :

" 1.   That, under the admitted facts and circumstances of this case, plaintiff cannot recover."

" 2.   That the agreement of March 3, 1885, upon which plaintiff claims, is null and void, and plaintiff cannot recover thereon."

" 3.   That in no event could the agreement of March 3, 1885, bind Bowman, as it was signed by him alone."

" 4.   That the sum of two thousand dollars, twenty-six dollars per month, and board of child, is an unreasonable and unconscionable charge for three months' services such as were performed by plaintiff, and cannot be allowed for that reason."

" 5.   That the said agreement of March 3, 1885, is null and void, for the reason that there was no consideration for the same."

" 7.   That it was the purpose and object of said agreement of March 3, 1885, to give plaintiff the sum of two thousand dollars in the event of the death of said Bowman, and hence she cannot recover."

"8. That under the facts and circumstances of this case the legacy amounting to two thousand dollars to plaintiff in the will of Bowman, was intended by him to take the place of two thousand dollars mentioned in the said agreement of March 3, 1885, and it was not the intention of said testator that she should get said sum of two thousand dollars twice."

"9. That the two thousand dollars given to plaintiff by Bowman in his will is a satisfaction of the two thousand dollars specified in the said agreement of March 3, 1885."

"10. The court declares the law to be that if S. M. Bowman, during the six months immediately prior to his death, was paralyzed and perfectly helpless, so much so that he had to be cared for by plaintiff, as if he were a little child, that she had to be with him constantly night and day, had to wash him, clothe him, and give him his medicines, that said Bowman had no children, and that his wife was in such a condition that she could not attend to him, and if said Bowman by the contract of employment paid her eighteen dollars per month at first, and afterwards, under a new arrangement, paid her twenty-six dollars per month and boarded her child, and that she was paid the sum of twenty-six dollars per month, and her child was furnished with board until said Bowman died, and if said Bowman, during the term of said employment, gave plaintiff a lot of ground, which she has since sold for twenty-nine hundred dollars, and that under his last will and testament plaintiff is given the sum of two thousand dollars and personal property worth five hundred dollars, and that her child is also given the sum of five hundred dollars, and that plaintiff was in no way related to the deceased, then said agreement so sued on, made two months prior to said Bowman's death, is null and void."

Under the declarations of law the court found the amount claimed by plaintiff less the sum of fifty-two dollars.

This case was tried by the court without the intervention of a jury. For this reason we shall consider the declarations of law given and refused only for the purpose of determining the theory on which the court tried the case.

The declaration of law given for the plaintiff ignores the question of undue influence on the part of the plaintiff, by reason of the confidential relations with the deceased, having procured the contract in suit. But, even if it be conceded that under the circumstances of this case the burden rested on the plaintiff of proving that no such influence was used, since no declaration of law was asked on the question by the defendant and since every presumption must be made by us in favor of the action of the court, we must hold that the court ignored the question of undue influence, not on account of a mistaken view of the law, but because of its opinion that there was under the evidence no undue influence in the case. Such opinion, we think, amply justified by the evidence.

The plaintiff accepted the contract and performed the services therein called for, hence there is no merit in the objection that the plaintiff did not sign the contract. *Lindell v. Rokes*, 60 Mo. 247. The contract was in its liberality and generosity in the nature of a gift, but it was not for that reason a gift in law. The services, in the consideration of which the deceased made the contract, had not been rendered by the plaintiff, and she was under no legal obligation to render them ; the mere fact, that she would have rendered them without the compensation named in the contract, cannot prevent her from recovering that compensation when she accepted the contract and rendered the services called for by it.

The fact that the entire compensation fixed by the contract was to become due and payable on the death of the deceased does not render the contract void as being against public policy. Similar contracts in this respect to the contract in suit have been upheld in this state. *Eupton v. Eupton*, 47 Mo. 37 ; *Sutton v. Heydon*,

62 Mo. 101; *Hiatt v. Williams*, 72 Mo. 214. But this fact, *i. e.*, that such compensation was to be payable on such death, in the absence of any evidence to the contrary, conclusively disproves the intention of the deceased to make the legacies provided in the will and the codicil satisfaction of the contract. The legacies were to be paid after the death of the wife of the deceased, and not before. These terms were less advantageous to the plaintiff than the terms on which the compensation fixed by the contract was to be paid to her; and the rule is that, where the legacy is the same in amount as the debt, still the legacy shall not (in the absence of proof that the intention of the testator was that it should) be deemed satisfaction of the debt, if the legacy is to be paid on terms less advantageous to the creditor than the terms on which the debt is payable. 2 Rorer on Legacies [1 Am. Ed.] 38, 41, 42, 44, 45; *Strong v. Williams Ex'rs*, 12 Mass. 393.

The judgment was, we think, for the right party, and is affirmed. All concur.